AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Three (3) Target Residences, as described in
Attachment A

Case No. MJ19-229

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Three (3) Target Residences, as described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B for List of items to be seized, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846, 823 | Manufacturing, distribution and possession with intent to distribute controlled substances; |
| 18 U.S.C. § 1956 | distribution of controlled substances by means of the internet; money laundering |

The application is based on these facts:
- ✓ See Affidavit of DEA Special Agent Joseph Cheng

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or ☐ telephonically recorded.

*Applicant's signature*

Joseph Cheng, DEA Special Agent
*Printed name and title*

☺ The foregoing affidavit was sworn to before me and signed in my presence, or
⊗ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 05/29/2019 _____

*Judge's signature*

City and state: Seattle, Washington

U.S. Magistrate Judge Paula L. McCandlis
*Printed name and title*

USAO: 2018R00949

**AFFIDAVIT OF JOSEPH CHENG**

| | |
|---|---|
| STATE OF WASHINGTON | ) |
| | ) ss |
| COUNTY OF WHATCOM | ) |

I, Joseph Cheng, being first duly sworn on oath, depose and say:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.      I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been so employed since August 2006. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I am currently assigned to the Bellingham Resident Office of the DEA's Seattle Field Division. My current assignment involves investigations of high-level drug trafficking organizations within the Western Washington area and elsewhere.

3.      I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of the distribution of controlled substances including fentanyl and its analogues, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana, and other dangerous drugs.

1      **4.**     I have interviewed numerous drug dealers, drug users, and knowledgeable

2    confidential informants about the lifestyles, appearances, and habits of drug dealers and

3    users. I have become familiar with the manner in which narcotics traffickers smuggle,

4    package, transport, store, and distribute narcotics, as well as how they collect and launder

5    drug proceeds. I am also familiar with the manner in which narcotics traffickers use

6    telephones, cellular telephone technology, internet, pagers, coded communications and

7    slang-filled conversations, false and fictitious identities, and other means to facilitate

8    their illegal activities and mislead law enforcement investigations. I have had discussions

9    with other law enforcement personnel about the packaging and preparation of narcotics,

10    the methods of illegal narcotics traffickers, and the security measures that narcotics

11    traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe

12    ledgers maintained by traffickers, and other documentation related to narcotics

13    trafficking. I have also examined documentation of various methods by which

14    methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled,

15    transported, and distributed. I have participated in hundreds of hours of surveillance of

16    narcotics traffickers. During surveillance, I have personally observed narcotics

17    transactions, counter surveillance techniques, and the ways in which narcotics traffickers

18    conduct clandestine meetings.

19      **5.**     I have also participated in investigations that involved the interception of

20    wire communications, including four investigations of large-scale drug trafficking

21    organizations in which I was the case agent and each of which resulted in the conviction

22    of approximately 20 individuals on federal drug-related charges. In addition to these

23    cases, I have participated in numerous other wiretap investigations in a variety of roles,

24    including by conducting physical surveillance and monitoring intercepted

25    communications. I have been directly involved in the review and deciphering of

26    intercepted coded conversations between narcotics traffickers that were later corroborated

27    by surveillance or by targets' statements. Throughout my law enforcement career, I have

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 2
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    spoken with, worked with, and gained knowledge from numerous experienced federal,

2    state, and local narcotics officers.

3        6.      I have a bachelor's of science in computer science, which I received from

4    San Jose State University in 2002. During the course of obtaining this degree I

5    completed courses in network management. Additionally, I have complete college level

6    course work on computer forensics. During those courses I have learned about network

7    layered architectures and the principles of network communications using various

8    network protocols.

9        7.      I have been assigned as a DEA technical agent since 2010, when I

10    completed the DEA Basic Technical Course. As part my duties I have been involved in

11    the searches of numerous cell phones and computers.

12        8.      The facts in this affidavit come from my training, experience, and

13    information obtained from other agents and witnesses.

14             **II.     PURPOSE OF THIS AFFIDAVIT**

15        9.      I make this affidavit in support of an application for warrants authorizing

16    the search of the following residences, which are further described below and in

17    Attachment A (attached hereto and incorporated by reference as if fully set forth herein),

18    for evidence, fruits and instrumentalities, as further described in Attachments B (attached

19    hereto and incorporated by reference as if fully set forth herein), of the crimes of

20    *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in

21    violation of 21 U.S.C. § 841(a)(1); and *Conspiracy to Distribute, and to Possess with the*

22    *Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), and

23    846, *Money Laundering*, in violation of 18 U.S.C. 1956; and *Distribution of Controlled*

24    *Substances by Means of the Internet*, in violation of Title 21, United States Code,

25    Sections 823, 841(h)(1), as described herein:

26          a)   **Target Residence 1:** 3423 68th Drive Northeast, Marysville,

27             Washington 98270, is believed to be the residence of Anthony
             PELAYO. **Target Residence 1** is a two story residence on the east side

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 3
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of 68th Drive Northeast in Marysville, Washington.  The house has blue siding with a grey roof and white trim.  The front door is accessed by a staircase with white railings.  There are two white garage doors facing west.

b) **Target Residence 2:** 18222 Russian Road, Arlington, Washington, is a property which investigators believe to be owned Anthony PELAYO and where PELAYO is believed to be building a new residence.  **Target Residence 2** is a nine acre lot on the south side of Russian Road.  The residence has a large wooden privacy fence bordering Russian Road.  On the east side of the lot is a gravel driveway.  A white mailbox with the numbers 18222 is on the west side of the gravel driveway.  The gravel driveway leads to a large two story house that is currently under construction.  To the south of the house under construction, are three large outbuildings, one with a red roof, one with a light colored roof and one with a green roof.

c) **Target Residence 3:** 415 Lakeview Road Unit F4, Lynnwood, Washington is believed to be the residence of Robert TABARES.  **Target residence 3** is a light colored mobile home with white trim, with "F4" marked on the west side of the trailer facing the roadway.  There is a covered wooden deck attached the north side of the mobile home.

10.     For each of the Target Residences, authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not where the items described in Attachment B (list of items to be seized) could be found.

## III.     SOURCES OF INFORMATION

11.     I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources and others:

a. My training and experience investigating drug trafficking and related criminal activity, as described above;

AFFIDAVIT OF SPECIAL AGENT CHENG - 4
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. Oral and written reports and documents about this and other investigations that I have received from agents of the DEA and the Whatcom County Sheriff's Office (WCSO), and other federal, state and local law enforcement agencies;

c. Physical surveillance conducted by the aforementioned agencies, and other law enforcement agencies, that has been reported to me directly or indirectly;

d. Telephone toll records and subscriber information;

e. Washington State Department of Licensing records;

f. Commercial Databases;

g. Public records;

h. Publicly viewable information on social media websites (*i.e.*, Facebook);

i. Document, photographs and other records obtained via search warrant and subpoena; and

j. Data obtained via court authorized search warrants.

12.     Since this Affidavit is intended to show only that there is a sufficient factual basis for a fair determination of probable cause to support the Application, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for search warrants for **Target Location 1, Target Location 2** and **Target Location 3**.

13.     In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## III.   SUMMARY OF INVESTIGATION

14.     An ongoing investigation is being conducted by the Drug Enforcement Administration (DEA) into the importation of powdered fentanyl and its analogues by Bradley WOOLARD, and others, both known and unknown.  Investigators believe that WOOLARD (and, possibly, others) ordered the fentanyl over the internet from China. Once WOOLARD and/or his coconspirators received the powdered fentanyl through the

AFFIDAVIT OF SPECIAL AGENT CHENG - 5
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | mail, WOOLARD caused the fentanyl to be pressed into fentanyl-laced counterfeit
2 | oxycodone pills.  Investigators believe that WOOLARD was working with Anthony
3 | PELAYO in the production and distribution of these fentanyl-laced counterfeit
4 | oxycodone pills.  Once pressed into pills, WOOLARD, PELAYO and others distributed
5 | these dangerous pills into the community.

6 |      15.    In July and August 2018, investigators executed multiple federal search
7 | warrants at WOOLARD's residence, located at 9717 99th Avenue Northeast, Arlington,
8 | Washington (hereinafter the "WOOLARD Residence").  Pursuant to those search
9 | warrants, investigators seized approximately 10,000 light blue pills marked "M30" which
10 | tested positive for furanyl fentanyl, a fentanyl analogue.  Investigators seized numerous
11 | items during the searches of the WOOLARD Residence and outbuildings, including 33
12 | firearms (the majority of which were concealed in a hidden room in a shop on the
13 | property), thousands of rounds of ammunition, approximately $1.1 million in suspected
14 | drug proceeds concealed in various locations throughout the WOOLARD Residence and
15 | in the shop areas on the property, an iPad, and cell phones, including an Apple iPhone.
16 | Investigators seized multiple documents from the WOOLARD Residence referencing
17 | telephone number (360) 395-5222 and email: bradwoolard79@gmail.com as being used
18 | by WOOLARD.

19 |      16.    Investigators searched the iPhone seized from the WOOLARD Residence
20 | pursuant to search warrants and  learned it was assigned (360) 395-5222 and Apple ID
21 | bradwoolard@ymail.com, and had two email accounts bradwoolard@ymail.com and
22 | bradwoolard79@gmail.com, synced with it.  Review of emails on this phone revealed
23 | email exchanges between WOOLARD, using bradwoolard79@gmail.com, and
24 | individuals who appeared to be based in China.  In these emails, WOOLARD and the
25 | China-based individuals openly discussed WOOLARD attempting to obtain various
26 | chemical substances, including fentanyl and furanyl fentanyl, from China.
27 |
28 |

AFFIDAVIT OF SPECIAL AGENT CHENG - 6
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17.    Additionally, investigators discovered messages (text or iMessage) communications between WOOLARD and "Tonny," who was the user of (425) 404-1227, that indicated that "Tonny" or "Tony" was a source of supply for "blues" (common slang for "M30" oxycodone pills) for WOOLARD. Investigators also found messages between WOOLARD and Shawna BRUNS, WOOLARD's wife regarding M30 pills. As discussed herein, investigators believe that "Tonny" or "Tony" is PELAYO, and further that PELAYO has been working with WOOLARD in the illegal distribution of pills for years.

18.    Additionally, investigators searched WOOLARD's iPad pursuant to a warrant and learned its listed owner was "Brad's iPad" and had an Apple ID of bradwoolard@ymail.com. In WOOLARD's iPad investigators located numerous messages between WOOLARD and a number which investigators believe to be used by PELAYO in which WOOLARD was providing PELAYO with a recipe on how to mix "active," which investigators believe to be fentanyl or a fentanyl analogue, to press into pills. Additionally, investigators identified a photograph sent to WOOLARD by PELAYO which appeared to depict a pill press. In addition, investigators located numerous message between WOOLARD and BRUNS, in which BRUNS sent WOOLARD photographs of emails stored on another phone of WOOLARD's. These emails appeared to depict Western Union tracking numbers and tracking numbers for parcels that investigators believe contain fentanyl or a fentanyl analogue.

19.    During the court authorized search PELAYO's iCloud back up data, investigators located numerous messages between PELAYO and a phone which investigators believe is used by Robert TABARES. The recovered messages indicate that TABARES was ordering and receiving supplies and equipment for PELAYO to be used in the process of pressing fentanyl laced counterfeit pills. Additionally, according to Western Union records, TABARES was involved in transferring money, on behalf of

AFFIDAVIT OF SPECIAL AGENT CHENG - 7
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   PELAYO and/or WOOLARD, to individuals in China, for the purposes of purchasing

2   fentanyl or fentanyl analogues.

3        20.    In light of the investigation to date, to include the seizures from the

4   WOOLARD Residence, and the known communications between WOOLARD,

5   PELAYO, and BRUNS, and PELAYO and TABARES, and the records discussed herein,

6   I believe that there is probable cause that evidence, fruits and instrumentalities of drug

7   trafficking and money laundering by PELAYO will be found at **Target Location 1** and

8   **Target Location 2** and by TABARES at **Target Location 3**.

9                    **IV.    PROBABLE CAUSE**

10       21.    As discussed herein, DEA is investigating fentanyl trafficking and related

11  offenses in the Western District of Washington and elsewhere, by Bradley WOOLARD

12  and his criminal associates.  The investigation is ongoing.  Based on my training and

13  experience, and information relayed to me by other law enforcement personnel, I know

14  that fentanyl is a Schedule II narcotic and a highly a dangerous drug.  Fentanyl is a

15  synthetic opioid that is 50 times more toxic than heroin.  In its purest form fentanyl is a

16  white powder or in grains similar in size to table salt.  For most people, two to three

17  milligrams of fentanyl is capable of inducing respiratory depression, arrest and possibly

18  death.  Two to three milligrams of fentanyl is comparable in size to five to seven

19  individual grains of table salt.  Additionally, counterfeit Percocet pills have been

20  associated with multiple overdose deaths in Skagit and Snohomish Counties in 2018 and

21  fentanyl has been linked to multiple overdoses in Snohomish County, Washington.

22       22.    On July 27, 2018, investigators observed a vehicle driven by Griffin

23  THOMPSON depart his residence in Bellingham, Washington, drop his passenger off at a

24  Safeway, located in Arlington, Washington and drive to 9717 99th Avenue Northeast,

25  Arlington, Washington (the WOOLARD Residence).  Investigators then observed

26  THOMPSON return to the Safeway, pick up his passenger and drive South.  Investigators

27  then had THOMPSON's vehicle stopped by uniformed officers.  The driver of the vehicle

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 8
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  was positively identified as Griffin THOMPSON, via his Washington driver's license and

2  the passenger was identified as Mikala MURPHY, via her U.S. passport  A narcotics

3  detecting K-9 was deployed to sniff the exterior of the vehicle and gave a positive alert to

4  the odor of narcotics emanating from the vehicle.  The vehicle was subsequently searched

5  pursuant to the vehicle exception.  During that search, investigators located and seized

6  from underneath the front passenger seat (in an area that could only be accessed from the

7  rear seats) a white box which contained 3 ziploc baggies of light blue colored pills

8  marked "M30." An open-source internet search indicated that pills marked "M30" are 30

9  milligram Oxycodone.  Oxycodone is a Schedule II narcotic.  These pills were sent to the

10  DEA laboratory for testing and the laboratory counted 3,137 pills and indicated that they

11  tested positive for furanyl fentanyl, which is a fentanyl analogue.  During a pat-down of

12  THOMPSON's person, approximately $8,122 of U.S. currency was recovered.

13  **A.      Execution of Multiple Search Warrants of the WOOLARD Residence in July**
      **and August 2018**

14

15          23.      On July 28, 2018, the Honorable Mary Alice Theiler signed a search

      warrant authorizing the search of 9717 99th Avenue Northeast, Arlington, Washington
16
      (the WOOLARD Residence), i.e., the residence of WOOLARD, Shawna Marie Bruns
17
      (WOOLARD's wife), and their minor children.   During the execution of the search
18
      warrant that day, investigators found approximately 10,000 of the counterfeit Percocet
19
      pills located in the office of the main residence.  In this office, there were numerous
20
      documents with the name Bradley WOOLARD.  Additionally seized from the office was
21
      a small container of blue dye, which investigators suspect could have been used by
22
      WOOLARD in the process of pressing white fentanyl powder and binding materials into
23
      counterfeit M30 pills.  The pills located in the office were consistent with the appearance
24
      of the pills seized from THOMPSON on July 27, 2018.  These pills were submitted to the
25
      DEA laboratory for testing and the laboratory counted 12,389 pills and indicated that they
26
      tested positive for furanyl fentanyl.
27

28  AFFIDAVIT OF SPECIAL AGENT CHENG - 9
      USAO #2018R00949

      UNITED STATES ATTORNEY
      700 STEWART STREET, SUITE 5220
      SEATTLE, WASHINGTON 98101
      (206) 553-7970

24.     Investigators also found approximately $400,000 in cash located in two safes, one in the office and one in the master bedroom closet. Items of dominion and control with WOOLARD's name were found in the office and master bedroom.

25.     During the July 28 search of the WOOLARD Residence, investigators seized two shipping labels from the trash in the office. One shipping label had the sender and recipient removed but described the contents as "Lab supplies" with a weight of 0.1 kilograms, a value of $5.00 and goods' origin of "CN". A second shipping label was largely intact and also listed the contents as "Lab supplies" with the same weight, value and goods' origin. This shipping label showed "Danette Skelton" and "32326 Mountain Loop Hyway, Granite Falls WA USA 98252" as the "ship to" information and the "from" information listed "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000." Additionally the shipping labels listed tracking number LS508043116CN. According to the USPS website, this package was delivered to the Granite Falls address on January 29, 2018.

26.     On August 16, 2018, the computer and other digital devices present in the WOOLARD Residence, including an Apple iPhone, were seized pursuant to a federal search warrant that had been issued by U.S. Magistrate Judge Paula L. McCandlis on August 15, 2018. Searches of WOOLARD's iPhone and iPad are discussed below.

**B.     Two Packages of Fentanyl Shipped from China Intercepted by Law Enforcement**

27.     As discussed above, the shipping labels found in the WOOLARD Residence listed the "from" information as "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000." Investigators identified two additional parcels that were en route to Western Washington from the same shipper as listed on packaging materials found in the WOOLARD Residence. Both parcels were intercepted. On August 2, 2018, investigators obtained federal search warrants for the two additional parcels, one of which was addressed to Sadie BATES at 12118 Hwy 99 #J 402, Everett, Washington, tracking number LY460463148CN, and one of which was addressed

AFFIDAVIT OF SPECIAL AGENT CHENG - 10
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to Adrian BERGSTROM at 200 East Maple St Apt 507, Bellingham USA US 98225,

2  tracking number LY466322829CN.

3      28.    The parcels were searched pursuant to the warrant. The contents of both

4  parcels was submitted to the DEA laboratory for testing. According to the DEA

5  laboratory, the contents of both parcels tested positive for Furanyl Fentanyl and the

6  contents weighed approximately 99.4 grams and 99.6 grams.

7  **C.    Search of WOOLARD's iCloud Account**

8      29.    On November 27, 2018, investigators received records from Apple.

9  According to the Apple records, an Apple account with Apple ID

10  bradwoolard@ymail.com in the name of Brad WOOLARD at 9717 99th Ave Northeast

11  Arlington, Washington existed with a full iCloud backup. The day phone number

12  associated to this account is (360) 395-5222. These records show that this Apple account

13  was created on April 10, 2013. The records also show an iTunes subscriber signup date

14  of September 18, 2009. As discussed above, the information for Apple ID

15  bradwoolard@ymail.com matches the information that investigators have for

16  WOOLARD.

17      30.    On January 22, 2019, US Magistrate Judge Paula L. McCandlis signed a

18  search warrant for multiple Apple iCloud accounts, including bradwoolard@ymail.com.

19  On the same date, investigators electronically served the search warrant on Apple. On

20  February 6, 2019, investigators received records from Apple in response to the search

21  warrant.

22      31.    Previous affidavits stated that the records provided by Apple in response to

23  this search warrant had been encrypted and were not accessible to investigators. In May

24  2019, I was advised by the DEA Digital Evidence Laboratory and the DOJ Computer

25  Crime and Intellectual Property Section how to access the data stored in the Apple iCloud

26  files. Investigators then began a review of the iCloud previously provided by Apple.

27  Investigators are still currently in the process of reviewing and tagging information

28  pursuant to the search warrant. The following is a brief selection of the information

AFFIDAVIT OF SPECIAL AGENT CHENG - 11
USAO #2018R00949

1  obtained from the iCloud backup data. Investigators located over 2000 messages
2  between WOOLARD and two phones which investigators believe to be utilized by
3  PELAYO, 425-314-3101 and 425-404-1227, as discussed elsewhere in this affidavit.
4  The first message occurred on August 28, 2017 and the last message on July 21, 2018,
5  seven days before the first search warrant at WOOLARD's residence.

6        32.     Messages between WOOLARD and both of PELAYO's phones contain a
7  significant number of messages discussing the trafficking of pills, which investigators
8  believe to be fentanyl laced.

9        33.     On July 7, 2018, PELAYO sent "Did she give u any tracking info" and
10 WOOLARD replied, "Not yet I can't get ahold of her. She said they were having a huge
11 storm two days ago and would ship when it passes." PELAYO said, "Ok people asking
12 when they should expect it they want that money lol." WOOLARD replied, "Yes for
13 sure. U will know the minute I do. What up w the btcn did I get there?" As discussed
14 above, investigators believe that WOOLARD was ordering fentanyl or fentanyl
15 analogues from "Mary" in China. Additionally, investigators know from this
16 investigation that WOOLARD sent Bitcoin to "Mary" as payment for the fentanyl. In
17 these messages investigators believe that PELAYO is asking when fentanyl ordered by
18 WOOLARD would arrive. The conversation continues, PELAYO said "Ya dude can do
19 it I'm gonna start doin sending this week" and WOOLARD replied, "So u didn't send
20 any?? I sent code." PELAYO responded "I haven't yet cuz the dude was out of town for
21 the 4th" A few messages later, PELAYO said, "It's gonna be a few payments he can only
22 do 15k at a time." WOOLARD said "Ok" and "I'll wait till I hear back." PELAYO
23 responded, "Ya I would like to get at least one before we send her 70k." WOOLARD
24 replied, "Yup." Investigators believe that WOOLARD and PELAYO are discussing
25 sending payment to "Mary" for the 7kg of fentanyl which WOOLARD ordered from
26 "Mary" in June of 2018. In the final exchange, investigators believe that PELAYO told

27
28
AFFIDAVIT OF SPECIAL AGENT CHENG - 12
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  WOOLARD that PELAYO would like to receive at least one parcel of fentanyl before
2  they sent "Mary" $70,000.

3      34.    On July 9, 2018, WOOLARD sent to PELAYO, "Got some tracking #s"
4  and PELAYO responded, "Ok u can send em to my other line."  WOOLARD then said,
5  "They for my peeps yours are tomo."

6      35.    During a review of the photos provided by Apple for the account with
7  Apple ID bradwoolard@ymail.com, in the name Brad WOOLARD, investigators
8  identified four photos (which I will refer to as Photographs #1 – 4) that show email
9  messages displayed on the screen of a cell phone.  Although the sender and recipient
10 email addresses are visible in only one of these photos, investigators believe all of the
11 email exchanges pertain to wire transfers of funds to China to pay for fentanyl, for the
12 reasons discussed below.

13     36.    A copy of a photograph that I will refer to "Photograph #1" is set forth
14 below:

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    37.    According to the metadata for Photograph #1, this photograph was taken on

18  February 23, 2018, at 1:19 p.m. using an iPhone 7 and the GPS Location was recorded as

19  48.08425, -122.09675.  According to Google Maps, these GPS coordinates are at the

20  WOOLARD Residence.

21    38.    Photograph #1 depicts an email message chain with the first message dated

22  "7/13/2017" and the visible text as "Hi friend, Good day 4879-6508-60, for Lou,

23  USD2700, 92112518-00, for" followed by 79 messages which are compressed and not

24  visible.  Almost seven months later, an email dated February 22, 2018, at 1:40 a.m., the

25  user of the email account broncosmith69@gmail.com sent an email to

26  greenchem201609@hotmail.com, stating, "Pkg 4 is still in China after a month."

27    39.    Based on my training and experience, I know that Western Union tracking

28  numbers (MTCN) are ten digits long.  As such, investigators believe that the ten-digit

1   numbers in this email could be MTCNs, particularly as the email also states "USD 2700,"
2   which likely refers to $2,700 in U.S. Dollars.

3       40.    Based upon my familiarity with this investigation, to include the shipment
4   of fentanyl and its analogues from China, prices for fentanyl and its analogues, and
5   WOOLARD's involvement in distribution of fentanyl-laced counterfeit oxycodone pills,
6   I believe that when broncosmith69@gmail.com, wrote, "Pkg 4 is still in China after a
7   month," I believe that the user of broncosmith69@gmail.com was referring to a
8   previously ordered package of controlled substances and was stating that said package
9   was still located in China.

10       41.    A copy of a photograph that I will refer to as Photograph #2 is set forth
11   below:

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF SPECIAL AGENT CHENG - 15
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23   42.   According to the metadata for Photograph #2, this photograph was taken

24  on January 11, 2017, at 12:49 p.m., using an iPhone 6s and the GPS Location was

25  recorded as 48.0844, -122.09703. According to Google Maps, these GPS coordinates are

26  at the WOOLARD Residence.

27
28
AFFIDAVIT OF SPECIAL AGENT CHENG - 16
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

43.    I was present at the execution of search warrants at the WOOLARD Residence, and I have also reviewed photographs taken during the search of the WOOLARD Residence.  The granite in the background of Photograph #2 appears to be similar to, if not the same as, the granite in the kitchen at the WOOLARD Residence.

44.    A copy of a photograph that I will refer to as Photograph #3 is set forth below:



Hi friend:

Good day!

WU info:

**First Name:** Jiemei
**Last Name:** Lou
Address: Changjiang Road, Gaoxin zone.
City: Hefei
Province: Anhui
Zip code: 230000
Country: China
Phone: +86-14790436795

Best regards,
Mary

AFFIDAVIT OF SPECIAL AGENT CHENG - 17
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

45.     According to the metadata for Photograph #3, this photograph was taken on March 4, 2017, at 8:23 a.m., using an iPhone 6s and the GPS Location was recorded as 48.08416, -122.09708.  According to Google Maps, these GPS coordinates are at the WOOLARD Residence.

46.     A copy of a photograph that I will refer to as Photograph #4 is set forth below:



47.     According to the metadata for Photograph #4, this photograph was taken on June 6, 2018, at 7:53 a.m., using an iPhone 7 and the GPS Location was recorded as

AFFIDAVIT OF SPECIAL AGENT CHENG - 18
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.06612, -122.10303.  According to Google Maps, this location is approximately 1.5 miles from the WOOLARD Residence.  As discussed below, investigators believe that the email depicted in Photograph #4 was contained in data obtained from Google for broncosmith69@gmail.com.

48.     The dates, sender email address(es), and recipient email address(es) are not visible in Photographs 2-4.  However, in light of the commonalities between the messages in Photographs 1-4 and the circumstances of this investigation, investigators believe that all four photographs pertain to payments of funds to China for purchase of fentanyl and/or its analogues.

49.     In reviewing Photographs #1-4, investigators noticed many similarities in the emails, in addition to the similar formatting.  In particular, Photographs #1 and 3 each refer to "Lou"; Photographs #2 and 3 are each from "Mary"; Photographs #1, 3 and 4 each begin, "Hi friend [.] Good day!"; and Photographs #2, 3, and 4 each include "WU Info," which investigators believe refers to a payee, payee address, and payee phone number, to be used in conjunction with wiring funds via Western Union.

50.     The payee names in Photographs #2-4 differ.  The payee in Photograph #2 is "Fengjun Huang", which is the same payee in the Western Union receipt found in WOOLARD's bedroom closet.  As discussed below, per Western Union records, Robert TABARES transferred money via Western Union on one occasion to "Fengjun Huang" in China.  The payee in Photograph #4 is "Dechao Hu," which according to Western Union records received three money transfers from TABARES.  Additionally, as discussed below, investigators believe that these money transfers made by TABARES were for the purpose of purchasing fentanyl or a fentanyl analogue.

51.     Although the payee names in Photographs #2-4 differ, the payee telephone number is the same in each photograph.  Also, each payee address includes Changjang City, Heifei, Anhui, 230000.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    52.    Photographs #1, 2, and 4 refer to "USD" (which commonly refers to U.S.
2    Dollars).  Photographs #2 and 4 appear to refer to prices in dollars that includes a
3    "shipping fee."   Specifically, Photograph #2 states, in part, "Unit 1: USD2300 for 250g,
4    USD3600 for 400g, including the shipping fee."  Photograph #4 states, in part, "Unit B:
5    USD850 for 100g, including the shipping fee."

6    53.    As discussed below, investigators believe that "unit 1" as referenced by
7    WOOLARD and "Mary" in these emails is furanyl fentanyl and that these emails are
8    payee information for Western Union money transfers.

9

10   **D.    Search of iPhone seized from WOOLARD's residence**

11   54.    On October 5, 2018, U.S. Magistrate Judge Paula McCandlis signed a
12   search warrant authorizing the search of multiple digital devices seized during this
13   investigation, including the iPhone assigned phone number (360) 395-5222 and Apple ID
14   bradwoolard@ymail.com.  Pursuant to the warrant, investigators searched this iPhone
15   and learned two email accounts were synced with this iPhone,
16   bradwoolard79@gmail.com and bradwoolard@ymail.com.  Review of emails on this
17   phone revealed email exchanges between WOOLARD and several individuals, who
18   appeared to be based in China, during which they discussed WOOLARD attempting to
19   obtain various chemical substances, including fentanyl and furanyl fentanyl.  It should be
20   noted that multiple documents previously seized from WOOLARD's Residence
21   identified (360) 395-5222 and bradwoolard79@gmail.com as belonging to WOOLARD.

22   55.    Investigators reviewed email messages stored on WOOLARD's iPhone
23   from the Gmail account bradwoolard79@gmail.com.  Multiple email messages were
24   observed that appeared to be WOOLARD, using bradwoolard79@gmail.com,
25   communicating with individuals, apparently in China in an effort to obtain fentanyl and
26   furanyl fentanyl.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 20
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

56.     For example, in March 2016, WOOLARD exchanged emails with the user of the email address best-feel@mail.com. WOOLARD wrote, "I need to stock up so I don't run into this problem of being out of product. What size pkg do u recommend?? I don't want to loose it in customs. I'm thinking 50g or 100g. What is my price?? And lead time?" best-feel@mail.com replied, "Don't worry, we always pack well and deliver the package in our way, very safe and we guaranteed delivery. It could be $650 for 50g and $950 for 100g, both including shipping cost for you. Usually it takes about 6-9 days to arrive your at door. Btw, you need to offer us a true address, and not to miss the package again!" Two days later, WOOLARD sent, "I was so excited to see the package in the mail until I saw this. This is not the product I received last time." The following day WOOLARD sent, "What is this?? All the Fu-f I've ever gotten from three vendors has been clean white powder." Best-feel@mail.com apologized to WOOLARD and explained the mistake, "you have gotten in hand must be 5g th-pvp" and then said "your order must have been sent to our other client by mistake … maybe we need to reship your order from our factory in China, how about it?" WOOLARD replied, "shit man I'm scared for the guy who got my package. He could easily die. It's a very strong chemical u need to track him down and tell him ASAP. Please overnight from USA if at all possible. I'm way behind."

57.     Based on my training and experience, and my familiarity with this investigation, I believe that "Fu-f" is WOOLARD's shorthand for furanyl fentanyl, and that the prices quoted by best-feel@mail.com are for 50g or 100g of furanyl fentanyl. Additionally, I believe that WOOLARD told the supplier in China that he has purchased furanyl fentanyl from three different suppliers in the past.

58.     In June 2016, WOOLARD again emailed best-feel@mail.com and asked "my friend it's been a while. Do u still have fu-f?? If so how much for 100g?" best-feel@mail.com replied, "hi Brad Woolard, nice to see you again. Yes, we have lots of FU-F in stock, could be $950 for 100g for you, including shipping cost. Have a nice

AFFIDAVIT OF SPECIAL AGENT CHENG - 21
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

weekend!"  WOOLARD then asked, "Do u by chance have real fent?? That's what my
clients want."  Best-feel@mail.com replied, "sorry brad woolard.  It was not legal in
China, and nobody could supply the real one  Have a good day?"  WOOLARD replied, "I
have a supplier who has the real one if you want to purchase from her it is very high-
quality."  In these email messages, investigators believe that WOOLARD was inquiring
the price for 100g of furanyl fentanyl.

     59.    Also found in WOOLARD's iPhone was a contact information for
"Shawna Marie" with phone number 425-501-9209.  As discussed above, investigators
believe "Shawna Marie" to be Shawna Marie BRUNS.

    60.    Additional iMessages between BRUNS and WOOLARD, using AppleID
bradwoolard@ymail.com, on March 1, 2014 said "Ya lover go get us ten blues from
Tonny take a thousand cus I owe him mortgage" and "Feed the dogs if you would lover
thank you."  BRUNS replied, "Ok I will."  Stored in the contacts of WOOLARD's
iPhone was "Tonny" with phone number 425-404-1227.  As will be discussed below,
investigators believe that "Tonny", the user of 425-404-1227, is Anthony PELAYO.
Investigators believe that in these messages, WOOLARD asked BRUNS to contact
PELAYO to get ten "blues" or oxycodone 30 mg pills, possibly pressed with fentanyl.
On January 9, 2015, PELAYO and WOOLARD exchanged the following messages:

    PELAYO: "How many did u want"

    WOOLARD: "Ten"

    PELAYO: "U can send her"

    WOOLARD: "She sleeping w the babies but as soon as she wakes up. Unless u
    wanna swing by"

    PELAYO: "I just left again just tell me when she is otw I'll have Noi put em in
    the. Truck"

    WOOLARD: "Ok ty bro"

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

61.     Investigators believe that WOOLARD was asking for 10 "M30" pills, possibly fentanyl laced, from PELAYO.  PELAYO told WOOLARD that WOOLARD could send "her," suspected to BRUNS based on the context of "she's sleeping w the babies," as WOOLARD and BRUNS are parents to twins.

**E.      Search of iPad seized from WOOLARD's residence**

62.     Also seized from WOOLARD's residence was an iPad.  The search warrant signed by US Magistrate Judge Paula L. McCandlis on October 5, 2018, also authorized the search of this device.  The "Owner Name" is listed as "Brad's iPad" and the associated Apple ID is bradwoolard@ymail.com.  As discussed above, this is WOOLARD's known Apple ID.  Investigators located numerous photos stored in this device which depict WOOLARD and BRUNS.

63.     Investigators reviewed iMessages between bradwoolard@ymail.com and 1-425-404-1227, which is saved under the contact name "Tonny."  This is the same phone number and name discussed above, which investigator believed to be used by PELAYO. On January 29, 2017 WOOLARD and PELAYO exchanged the following messages:

> WOOLARD: "U should run enuf to get by til I'm back before u move it. Might need my adjustments after the ride."
>
> PELAYO: "Ya that is my plan I'm gonna run that whole bucket at least then c where I'm at."
>
> PELAYO: "Tim never hit me up dude said he will swap that 30 tomo"
>
> WOOLARD: "Might be a day or two. U know how it goes"
>
> WOOLARD: "But thank you."
>
> WOOLARD: "This will be a good thing for us. Safe to only I know where and I'm as solid as a rock."
>
> WOOLARD: "I just made a offer on a beach house. Our family's can have fun this summer and for a long time."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       PELAYO: "O ya I'm gonna save every penny to ya this is gonna b hella good I'm

2       gonna b working this week on cleaning some shit out and all that good stuff"

3       WOOLARD: "Good deal.  Please toss the old presses out for me"

4       WOOLARD: "Keith will help. I'll send his #"

5       PELAYO: "Ok would you mind if I take them apart so I could just put them in

6       different bags"

7       WOOLARD: "Not at all use my tools whatever u need"

8       PELAYO: "Ok cool that will be lighter when I toss it."

9       64.     Based on the ongoing conversation, the ongoing investigation, and my

10   training and experience I believe, in this conversation, that PELAYO and WOOLARD are

11   discussing PELAYO pressing a large quantity of pills before WOOLARD left town and

12   that WOOLARD asked PELAYO to dispose of some old pill presses for WOOLARD.

13       65.     On January 31, 2017, WOOLARD sent, "I have huge respect for you bro.

14   U do good for your family.  Work out stay healthy. I look up to u in a way. I will be

15   more like you.  I'm having a pretty rought time but it's good.  I'm so mad at drugs.  I'll

16   never touch one again.  Never give me any. Ever. Plase no matter what I say or do."

17   PELAYO replied "Ya I got u bro the first week is gonna b rough u can get threw it and

18   leaving for a month after is the smartest thing u can do that will help out a lot and once u

19   get there won't be nothing around and u just gotta focus on stacking money plus this time

20   ur not gonna be hurting for cash U can keep urself busy and not b worried about bills

21   being paid u kno."  During the course of the investigation, agents learned that

22   WOOLARD personally used illegal drugs.  Based on these messages and the messages

23   discussed below, investigators believe that WOOLARD is referring to not personally

24   using drugs any longer, and not to stopping his distribution activities.

25       66.     The following exchange between WOOLARD and PELAYO, using the

26   425-404-1227, occurred on February 7, 2017:

27       WOOLARD: "Tim said the things were bad.  I'll call him in a he to see how."

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 24
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    WOOLARD: "A hr"

2    WOOLARD: "U will have to make adjustments"

3    PELAYO: "Ok just let me kno cuz those r the ones me and u made"

4    WOOLARD: "Really?? They should be fine"

5    PELAYO: "Ya, I haven't gave him any yet the last ones he got were from u"

6    WOOLARD: "I guess the strength is down a bit and not quite hard enuf. Both will

7    be fixed by increasing the weight. Please weigh them and if you can break them

8    with your fingers they are to soft. Moving the machine did this I'm sure."

9    PELAYO: "I was about to over there to work what should I do"

10    PELAYO: "Ya I was weighing the ones I made made sure they're were 128 right"

11    WOOLARD: "We might have to add a lil active to it. We will have to grind and

12    repress when I get back but for now we just fix and make more. They should

13    weigh I'll know more later just hang tight for now."

14    WOOLARD: "Pull the dry pads out that might be affecting it"

15    WOOLARD: "Fuck"

16    PELAYO: "Ok"

17    PELAYO: "I moved almost 2k so far and no one has called me I wonder why they

18    calling him that's weird"

19    WOOLARD: "I'll do some math and u can add like .02 mg to each on before next

20    press.  They have bigger tolerances."

21    WOOLARD: "He has fiends"

22    WOOLARD: "I'll hit u back later"

23    PELAYO: "Ok should I go take those pads out real quick"

24    PELAYO: "Or just wait for ur call"

25    WOOLARD: "I'm doing some math. Give me a min"

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    WOOLARD: "Ok weigh out 1560g of mix. Add 2.5g of active that has been

2    ground. Mix super good. That will make close to 12000 for his next batch. Make

3    them. 130 ea but same size. Should fix it."

4    67.    In the messages described above, investigators believe that PELAYO told

5  WOOLARD that their customer "Tim" complained about the potency of the pills.

6  Investigators believe that the term "active," as used by WOOLARD, is a reference to the

7  active ingredient in the pills, believed to be fentanyl or a fentanyl analogue. Investigators

8  believe that WOOLARD and PELAYO discussed how to increase the potency of the pills

9  that PELAYO was pressing on WOOLARD's behalf in response's to "Tim's" complaint

10 about potency. The message exchange concluded with WOOLARD providing PELAYO

11 with an updated "recipe" for the pills. Additionally, when PELAYO said, "I moved

12 almost 2k so far and no one has called me," investigators believe that PELAYO told

13 WOOLARD that PELAYO has distributed 2,000 pills himself and they did not complain

14 about the quality.

15    68.    On February 8, 2017, PELAYO sent the photograph below to WOOLARD

16 followed by a message that said "call me."

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



69.    Investigators conducted an internet search for pill presses with a similar appearance.  Investigators identified a RTP9 Rotary Tablet Press, sold by LFA Tablet Press that appeared consistent in appearance to the above photograph.  According to the LFA website, this pill press weighs 260 kg or 485 pounds.  Investigators have obtained court authorization for search warrants on approximately 10 separate locations through

AFFIDAVIT OF SPECIAL AGENT CHENG - 27
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the course of this investigation and have been unable to locate the pill press depicted in the above photograph or any other pill presses. Based on the messages between PELAYO and WOOLARD, investigators believe that PELAYO had access to and knew the location of the pill press utilized by WOOLARD and PELAYO to press fentanyl laced pills.

70.     On March 27, 2017, WOOLARD sent to PELAYO, "R u up? I'm going to my cabin and was going to drop that 5000 on way." PELAYO replied, "I gotta get em finished I thought U where gonna give me a day notice I will have it ready for u in a few hrs tho" and "I'm only short a few k." On March 30, 2017, PELAYO sent "Hey I guess Noi client canceled do u wanna go back out there tomo and mess with the machine" and WOOLARD replied "yes." PELAYO then sent, "Koo I'll come by after the gym again" and WOOLARD replied "k" and "I got that pkg to."

71.     Investigators also reviewed iMessages between bradwoolard@ymail.com and "Shawna Marie," using phone number 425-501-9209. Investigators identified a message dated January 29, 2017, from "Shawna Marie," which said "Kisses miss you tons. How are you doing" with a photo of BRUNS attached. Based on my participation in this investigation, I am familiar with BRUNS' appearance, and I believe that "Shawna Marie" is Shawna Marie BRUNS, WOOLARD's wife.

72.     On January 30, 2017, WOOLARD wrote, "I'm going to gym. Can u send me a pic of the tracking #s from email on my other phone. U might have to dig a bit to find them." WOOLARD and BRUNS then exchanged multiple messages until BRUNS asked "Who is the email from Mary or Rc chem." WOOLARD replied, "Marry it is resent" and "Newest email w tracking # on pictures." BRUNS responded by sending the following photograph, which I will refer to as Photograph #5, and wrote, "That it?":



73.     The MTCN numbers listed in Photograph #5 -- 911-821-0080 and 035-559-6719 – match the MTCN numbers for co-conspirator Keith STRAND's two wire transfers on January 12, 2017, to Fengjun HUANG.  The metadata indicates that Photograph #5 was taken on January 29, 2017, at 4:47 p.m., using an iPhone 6s with no location data present.

74.     WOOLARD replied, "Close" and "Pictures of packages and mail labels." BRUNS and WOOLARD exchanged multiple emails where they discussed where to find the emails WOOLARD was looking for.  BRUNS then sent the following photograph, which I will refer to as Photograph #6:

AFFIDAVIT OF SPECIAL AGENT CHENG - 29
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



75.     WOOLARD and BRUNS continue to exchange messages with WOOLARD directing BRUNS where to find the emails.  During that exchange, BRUNS sent the following three photographs to WOOLARD.

76.     BRUNS then sent WOOLARD a photograph that I will refer to as Photograph #6.  Photograph #6 is set forth below, and it appears to depict the same email shown in Photograph #5:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22      77.    Next, BRUNS sent WOOLARD a photograph that I will refer to as
23  Photograph #7.  Photograph #7 is set forth below:
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
19   78.   According to Google Translate, the Chinese characters in Photographs #7

20   (and in Photograph #8, below) are translated as follows:

21   • 发件人: 绿儿 – Sender: Green Child

22   • 发送时间: 2017 年 1 月 16 日 1:51:00 – Sending time: 2017 year 1 month 16 day

23
24      1:51:00

25   • 收件人: Bronco Smith – Recipient: Bronco Smith

26   • 主题: 答复(repeating) – Theme: reply (repeating)

27   79.   After receiving Photograph #7, WOOLARD responded, "Yup. Good job."

28
AFFIDAVIT OF SPECIAL AGENT CHENG - 32
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      80.    Next, BRUNS sent WOOLARD a photograph, which I will refer to as

2  Photograph #8, and wrote, "That was under it too."  Photograph #8 is set forth below:



22     81.    After receiving Photograph #8 from BRUNS, WOOLARD replied, "Thank

23  you. You rock."

24     82.    Investigators believe that in these messages BRUNS sent WOOLARD

25  photographs of emails that WOOLARD had saved on a different phone.  Photograph #7

26  includes an email from greenchem201609@hotmail.com dated January 18, 2017, and

27  refers to "EMS Express."  According to a Google search, EMS Express is an international

28  express postal service.  Based upon my participation in this investigation, I believe that in

AFFIDAVIT OF SPECIAL AGENT CHENG - 33
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  this email exchange, "Mary" was providing "Bronco Smith" with two tracking numbers
2  for packages mailed from China that contained fentanyl (or its analogues).

3       83.   I also note that in Photograph #5, the Chinese character, which translates to
4  green" in the "To" line, is the same as in Photograph #1 and in the subscriber information
5  for greenchem201609@hotmail.com.  The emails depicted in Photograph #1 and #5 both
6  appear to originate from "Bronco Smith." Additionally, Photographs #7 and #8 are from
7  "Mary," similar to Photographs #2 and #3.

8       84.   In light of the above, investigators believe that WOOLARD is the user of
9  the broncosmith69@gmail.com.

10 **F.    Identification of Anthony PELAYO and Toll Analysis**
11      85.   According to records received from AT&T, the financially liable party for
12 425-404-1227 is Vilayvanh N Soutavong at 3615 81st Drive Northeast, Marysville,
13 Washington and the user is "Tony N P" at 3423 68th Drive Northeast, Marysville,
14 Washington 98270 (**Target Location 1**) with the listed email address of
15 NOI4786@gmail.com.  The AT&T records indicate that the 425-404-1227 was activated
16 on June 17, 2011 and was still active as of the date of the records, March 19, 2019.

17      86.   According to the Snohomish County assessor's website, 3423 68th Drive
18 Northeast, Marysville, Washington 98270 (**Target Location 1**) is owned by Anthony R
19 PELAYO.  I know that "Tony" is a common abbreviate for Anthony.

20      87.   According to Homeland Security records, Vilayvanh Soutavong has a
21 middle name of Noi. During the search of WOOLARD's iPhone and iPad, investigators
22 identified numerous messages between WOOLARD and PELAYO, and WOOLARD and
23 BRUNS, where Noi is mentioned as a close associate of PELAYO's.  Specifically, in
24 WOOLARD's iPhone on August 16, 2014, WOOLARD sent to BRUNS, "Tony & noi
25 having baby too. Just saw ok noi Instagram."  Also, on February 13, 2015, WOOLARD
26 sent to PELAYO, "Can noi stash ten Ill drop your cash. He wants another pkg to" and "I
27 got cash for the 10 as well" and on March 13, 2016, WOOLARD sent to PELAYO, "Can
28 noi stash them I'll leave u doe." Based on this information, investigators believe that

AFFIDAVIT OF SPECIAL AGENT CHENG - 34
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  PELAYO is the user of 425-404-1227 and the "Tonny" or "Tony" referenced by
2  WOOLARD.

3      88.      According to NCIC, PELAYO has a conviction for a Washington State
4  controlled substance violation related to marijuana.

5      89.      According to tolls records obtained from AT&T, PELAYO's phone, 425-
6  404-1227, was in contact with WOOLARD's cell phone, 360-395-5222, 707 times
7  between January 1, 2016 and July 29, 2018.  As discussed above, a search warrant was
8  executed at the WOOLARD Residence during the evening on July 28, 2018.  According
9  to the AT&T toll records, on the morning of July 29, 2018, WOOLARD called 425-404-
10  1227 and talked for over 3 minutes.

11      90.      The toll records also indicated that PELAYO was in contact with 425-239-
12  1748 1712 times between April 4, 2016 and August 31, 2016.  As discussed below, 425-
13  239-1748 was listed on the broncosmith69@gmail.com account, which investigators
14  believe was used by WOOLARD.

15      91.      In addition, the toll records show the 425-404-1227 was in contact with
16  BRUNS's phone, 425-501-9209, four times on October 12, 2018 and 39 times between
17  on April 29 and 30, 2019.

18      92.      According to T-Mobile records, 425-691-9633 is subscribed to Richard
19  TABARES at 415 Lakeview Road, Unit F4, Lynnwood, Washington 98087 (**Target**
20  **Location 3**) and was activated on October 27, 2008.  As discussed below, investigators
21  believe that TABARES is involved in the distribution and manufacture of counterfeit
22  "M30" pills pressed with fentanyl.

23      93.      The toll records for PELAYO's phone, 425-404-1227, indicate that
24  PELAYO's phone was in contact with 425-691-9633 (TABARES' phone), 1536 times
25  between January 3, 2016 and March 28, 2019.  Of those 1536 contacts, 30 occurred
26  between January 1, 2019 and March 28, 2019.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 35
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    94.     As discussed below, according to Western Union records Robert

2  TABARES, provided his Washington Driver's License and phone number 425-691-9633

3  when he sent multiple money transfers to China to various recipients, including Dechao

4  Hu and Fengjun Huang.  These names are also in the photos of the emails located in the

5  iPad seized from WOOLARD's residence.  And, as discussed below, in an email between

6  broncosmith69@gmail.com (WOOLARD) and greenchem201609@hotmail.com (a

7  Chinese source of supply) the name Dechao Hu is provided as the name of a recipient of

8  a Western Union money transfer which was payment for Butryl-fentanyl, a fentanyl

9  analogue.

10    95.     According to NCIC, TABARES has convictions for Assault, Malicious

11  Mischief and driving under the influence.

12    96.     According to records received from Apple, 425-404-1227 is the phone

13  number listed on an Apple account with the Apple ID of anthonypelayo@comcast.net.

14  This account has a customer name of Anthony PELAYO and an address of 3423 68th

15  Drive Northeast, Marysville, Washington.  The Apple records indicated that in September

16  2014, PELAYO purchased an iPhone 6.  The Apple records indicated that this Apple

17  account was originally in the name Vilayvanh Soutavong, the same name in which

18  PELAYO's phone is subscribed, and that in March of 2016, the account was changed to

19  PELAYO's name.

20    97.     .

21

22  **G.      Search Warrant on Google for account of broncosmith69@gmail.com**

23    98.     On or about March 18, 2019, investigators received records from Google.

24  According to those records, broncosmith69@gmail.com is a Gmail email address in the

25  name of "Bronco Smith" with Account ID 886914477346 which was created on April 4,

26  2016 with the last logins dated June 6, 2018, March 21, 2018 and December 19, 2017.

27  The listed "SMS" is 425-239-1748.  Google records indicated that this account has access

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | to the following services: Android, Gmail, Google Calendar, Google Chrome Sync,

2 | Google Hangouts, Location History, Minutemaid, Web & App Activity and YouTube.

3 |   99. Investigators searched the Washington Department of Licensing and did

4 | not find any driver's licenses or vehicles registered to "Bronco Smith," as such,

5 | investigators believe that "Bronco Smith" is a fictitious name.

6 |   100. According to AT&T, 425-239-1748 was activated on April 4, 2016, and

7 | was subscribed to Tracfone at 8390 Northwest 25th Street, Doral, Florida. This phone

8 | was active until May 8, 2017. According to Tracfone records, this account has no listed

9 | name or address and was active from April 4, 2016 through December 14, 2016;

10 | however, the listed phone number on the account was 425-501-9209. As discussed

11 | above, 425-501-9209 is the phone number used by BRUNS.

12 |   101. On March 26, 2019, US Magistrate Judge Paula L. McCandlis authorized a

13 | search warrant for the Google account, broncosmith69@gmail.com and

14 | bradwoolard79@gmail.com. According to the data provided by Google, on June 28,

15 | 2018, "Mary," using greenchem201609@hotmail.com, sent an email to WOOLARD,

16 | using broncosmith69@gmail.com. This email contained quoted prior emails between the

17 | two individuals. In a quoted email dated June 3, 2018, "Mary" said "Unit b is butyr-fent,

18 | in stock." Based on my training and experience I believe that "butyr-fent" is short hand

19 | Butyrylfentanyl, an analogue of fentanyl. Additionally, I know Butyrylfentanyl is a

20 | Schedule I controlled substance according to the DEA. Several quoted emails later,

21 | WOOLARD sent "I'll have addresses today. How my much is the 100g sample? Send a

22 | name I'll western union the money." "Mary" replied with the following:

23 |     Hi friend,
    Good day!

24 |

25 |     Sorry for delaying replying.
    unit B: USD850 for 100g, including the shipping fee.

26 |

27 |     WU info:
    First Name : Dechao

28 |

AFFIDAVIT OF SPECIAL AGENT CHENG - 37
USAO #2018R00949

Last Name : Hu
Address: King Tower, Changjiang Road, Gaoxin zone.
City : Hefei
Province : Anhui
Zip code : 230000
Country : China
Phone : +86-14790436795

Best regards,
Mary

102.    In this email, I believe "Mary" is directing WOOLARD to send $850 to Dechao Hu in China as payment for 100g of Butryl-fentanyl. Additionally, this email appears to be the same email that is depicted in Photograph #4, which was located in WOOLARD's iCloud account.

103.    The quoted conversation continues on June 6, 2018 when "Mary" wrote, "I have checked with lab again about unit 1, lab said, this time, they will make about 7kg, do you need all pls??? pls confirm all the quantity that you need and reply me asap." WOOLARD replied, "I will but it all. Yes 7kg 140k." "Mary" asked WOOLARD, "OK, if you are sure and confirm, I will ask lab to make it asap. Do you still need 100 g unit b pls??" WOOLARD replied, "I confirm I have the cash ready for unit 1. How long will it take? Do I need unit b to fill orders while I wait??" "Mary" replied, "Need about 15 days to make this batch of unit 1. Order unit B or not, depend on you. Another very very important thing is: Hope you can prepare enough and different shipping addresses. If we send unit 1 to one address frequently, both of us are not safe. pls understand." Based on the emails discussed below, investigators believe that in these emails, WOOLARD ordered seven kilograms of fentanyl from "Mary."

104.    In an email dated June 27, 2018, WOOLARD sent "Please send three packages to each a week or more apart" to "Mary" with the following attachment.

Cheron Inglis
20100 60th Ave W. G 36
Lynnwood, Wa 98036

Cheryl Inglis
1406 Lakewood Dr.
Camano Island, Wa 98282

Ed Banto
1305 Uplands Dr.
Camano Island, Wa 98282

Raymond Jones
2405 Harrison Ave
Everett, Wa 98201

Sadie Bates
12118 Hwy 99 #J402
Everett, Wa 98204

Jessie Simmons
729 Pecks Dr #2
Everett, Wa 98203

Adrian Bergstrom
200 East Maple St. Apt 507
Bellingham, Wa 98225

105.    On July 17, 2018, "Mary" sent an email with a subject of "Unit One" to WOOLARD. This message was a reply to a previous string of messages between the same two email accounts. The body of the email contained the follow list:

The 1st 100g tracking: LY422564353CN. (to Cheron Inglis)(labled BS621)

The 2nd 100g tracking: LY422564248CN. (to Cheryl Inglis)(labled BS623)

The 3rd 100g tracking: LY422564203CN. (to Raymond Jones)(labled BS626)

AFFIDAVIT OF SPECIAL AGENT CHENG - 39
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1            The 4th 100g tracking: LY428523365CN. (to Sadie Bates)(labled BS630)

2            The 5th 100g tracking: LY433444541CN. (to Adrian Bergstrom)(labled

3            704)

4            The 6th 100g tracking: LY433444524CN. (to Ed Banto)(labled 707)

5            The 7th 100g tracking: LY437968898CN. (to Raymond Jones)(labled 710)

6            The 8th 100g tracking: LY437968867CN. (to Cheron Inglis)(labled 713)

7            The 9th 100g tracking: EA363078747CN. (to Jessie Simmons)(labled 702)

8            The 10th 100g tracking: LY460463148CN. (to Sadie Bates)(labled 716)

9      106.    The 10th parcel on the list with tracking number LY460463148CN to Sadie

10 BATES is the parcel described above, which was seized by law enforcement and the

11 contents of which was tested at the DEA laboratory and was positive for furanyl fentanyl

12 and weighted approximately 99 grams.

13      107.    Upon further review of the broncosmith69@gmail.com emails,

14 investigators identified an email dated April 5, 2016, which was forwarded from

15 bradwoolard79@gmail.com to broncosmith69@gmail.com.  This email contains a string

16 of emails between WOOLARD and mary-ytchem@hotmail.com, as discussed below

17 investigators believe it to be used by the same "Mary" that uses

18 greenchem201609@hotmail.com.  In the quoted portion of the message, on April 27,

19 2016, "Mary" wrote, "How about pure fentanyl-Hcl white powder pls? It's stronger than

20 U47700 and Fu-F."  WOOLARD wrote back, "I just got some of that.  It seams to be the

21 best product. I am interested in that."  "Mary" replied, "fentanyl (we call "unit 1" for

22 safe): USD180 for 10g, USD550 for 50g, USD1000 for 100g, USD2400 for 260g,

23 including the shipping fee, white crystalline powder, purity:99%."  WOOLARD replied,

24 "I need to sample unit 1."  In September 2016, the DEA placed U-47700 into Schedule I.

25 Additionally, as discussed above, "fu-f" is believed to be short hand for furanyl fentanyl.

26 Investigators believe that "unit 1," as referred to by WOOLARD and "Mary," is fentanyl

27 and that in the June 6 email, WOOLARD ordered seven kilograms of fentanyl.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 40
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

108.    Additionally, as discussed below, investigators believe in the packages listed above, including the parcel which was seized addressed to BATES, that WOOLARD was shipped furanyl fentanyl, inadvertently by "Mary" instead of the fentanyl requested by WOOLARD.

109.    Also in the broncosmith69@gmail.com emails, on July 18, 2018, WOOLARD forwarded two emails to broncodavis69@gmail.com.  Both of those emails contained conversations between WOOLARD and greenchem201609@hotmail.com. One email contained a Bitcoin address and the other email contained the July 17, 2018 email described above.  These two emails are the last two outgoing emails sent from the broncosmith69@gmail.com email address.  As detailed below, investigators believe that WOOLARD switched from the broncosmith69@gmail.com email address to broncodavis69@gmail.com at this time.

**N.      Search Warrant on Microsoft for emails of greenchem201609@hotmail.com**

110.    As discussed above, investigators identified greenchem201609@hotmail.com as the email of one of WOOLARD's sources of supply, believed to be in China.  On March 26, 2019, US Magistrate Judge Paula L. McCandlis authorized a search warrant for the Microsoft account, greenchem201609@hotmail.com. On April 17, 2019, investigators received data from Microsoft in response to the court authorized search warrant.  Investigators began their review, which is still on going, of the data.

111.    Investigators identified an email dated July 18, 2018, from broncodavis69@gmail.com to greenchem201609@hotmail.com with the subject "Unit 1."  The body of this email said, "Bronco new safe email."  Based on this email and the above described forwarded emails from broncosmith69@gmail.com, investigators believe that WOOLARD changed email accounts to broncodavis69@gmail.com to communicate with his China source of supply.

AFFIDAVIT OF SPECIAL AGENT CHENG - 41
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    112.   In an email dated July 27, 2018, from greenchem201609@hotmail.com to

2  broncodavis69@gmail.com, investigators identified that this email contained quoted

3  conversation dating back to the July 18, 2018, email described above.  In the quoted

4  conversations on July 23, 2018, WOOLARD wrote, "Is this real unit 1? I'm getting

5  negative feed back. Maybe its just not as strong?? It looks and smells different then

6  before."  The following day, "Mary" replied, "After you mailed me, we checked carefully

7  each step and each department, finally, we found out it was our fault, the engineer in the

8  lab did fuf, it's not unit 1, (fuf approximately one fifth as potent as unit 1)."  That

9  message continued with "Mary" telling how they would compensate WOOLARD for the

10  mistake.  WOOLARD then wrote, "Ok thank you for letting me know.  Ill look forward

11  to the new product" and "Ill still send more btcn once unit one is good. I want at least 3kg

12  and Ill get more addresses."  Based on these emails, investigators believe that

13  WOOLARD intended to order fentanyl but was shipped furanyl fentanyl instead.

14  **H.     Review of Western Union Money Transfers**

15    113.   On March 26, 2019, investigators received records from Western Union.

16  These records indicated a Robert TABARES, at address 415 Lake View Rd. F4,

17  Lynwood, Washington 98087 (**Target Location 3**) and with phone number 425-691-

18  9633 sent seven different money transfers to five different individuals.

| US Dollars Sent | Send Date | Send Time (EST) | Payee Full Name Provided by Payee | Street Address Provided by Payee | Address City Provided by Payee | Address State Code Provided by Payee | Address Zip Code Provided by Payee |
|---|---|---|---|---|---|---|---|
| 1125.00 | 7/18/2017 | 23:39:00 | DECHAO HU | CHANGJIANGXILU | HEFEI | AN | 230000 |
| 1500.00 | 7/17/2017 | 23:04:00 | DECHAO HU | GUANGLIHUAYUAN GUANGLIHUAYUAN | HEFEI | AN | 230000 |
| 1500.00 | 7/17/2017 | 21:39:00 | FENGJUN HUANG | CHANGJIANGLU CHANGJIANGLU | HEFEI | AN | 230000 |

28

| | | | HONGXIAN | YOUQIAOQUZHUXIANZHUANG | | | |
|---|---|---|---|---|---|---|---|
| 1500.00 | 3/11/2017 | 20:16:00 | SHAO | YOUQIAOQUZHUXIANZHUANG | SUZHOUSHI | AN | 234111 |
| 1800.00 | 3/11/2017 | 18:09:00 | DECHAO HU | GUANGLIHUAYUAN GUANGLIHUAYUAN | HEFEI | AN | 230000 |
| 900.00 | 1/12/2017 | 23:10:00 | TING ZHENG | 669        669 | HEFEI | AN | 230000 |
| 900.00 | 1/12/2017 | 22:46:00 | TING ZHENG | 669        669 | HEFEI | AN | 230000 |

114.    As discussed above, the photos located on the iPhone seized from WOOLARD's residence appeared to depict information regarding Western Union money transfers.  Investigators believe that these money transfers were for the purpose of purchasing fentanyl, furanyl fentanyl, or another fentanyl analogue.

**I.    Surveillance of Anthony PELAYO on March 25, 2019**

115.    On March 25, 2019, investigators conducted physical surveillance of PELAYO beginning at his residence at 3423 68th Drive Northeast, Marysville, Washington (PELAYO's residence, **Target Location 1**).  At approximately 12:11 p.m., investigators observed a blue GMC pickup, bearing Washington license plate C58448L, park in the driveway of PELAYO's residence.  According to the Washington department of licensing, this vehicle is registered to Anthony R PELAYO at 3423 68th Drive Northeast, Marysville, Washington (PELAYO's residence).  Investigators later positively identified PELAYO as the driver of the vehicle via his Washington driver's license photograph.

116.    At approximately 12:30 p.m., investigators observed PELAYO leave his residence (**Target Location 1**), driving the GMC pickup, and followed him to a residence a short distance away.  PELAYO remained at that residence until approximately 2:01 p.m., when investigators observed PELAYO get into the passenger seat of a red Chevy Silverado.  The license plate of this vehicle was later identified as WA/WW09741.  Investigators observed the red Silverado drive away.  Investigators lost

AFFIDAVIT OF SPECIAL AGENT CHENG - 43
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    sight of the red Silverado briefly until locating it a nearby O'Rielly auto parts.  According

2    to the Washington Department of Licensing, the red Silverado is registered to Jose

3    LUGO at 4628 195th Street Northeast, Arlington, Washington.

4           117.    According to NCIC, LUGO has a prior federal conviction for distribution

5    of oxycodone and multiple convictions for possession of a controlled substance in Utah.

6    Based on photos taken during surveillance, LUGO matches the physical description of

7    the driver of the red Silverado.

8           118.    Investigators continued to surveil PELAYO and LUGO as they drove to a

9    76 gas station and on to PELAYO's residence (**Target Location 1**).  They remained

10   there for a short amount of time before returning to the residence where PELAYO's

11   vehicle was parked.  PELAYO and LUGO remained at the residence as investigators

12   terminated surveillance.

13          119.    On May 3, 2019, investigators again observed PELAYO and LUGO

14   together when they observed PELAYO and LUGO each driving two vehicles together

15   from Everett, Washington to PELAYO's residence (**Target Location 1**).  Both LUGO

16   and PELAYO were later seen leaving PELAYO's residence together.

17   **G.    Court Authorized GPS tracking device**

18          120.    On April 18, 2019, US Magistrate Judge Brian A. Tsuchida authorized a

19   tracking warrant for PELAYO's vehicle and cell phone, 425-404-1227.  On April 22,

20   2019, investigators began receiving location data from AT&T for PELAYO's 425-404-

21   1227 phone and on April 24, 2019, a court authorized GPS tracking device was installed

22   on PELAYO's GMC pickup.

23          121.    The location information provided by AT&T for PELAYO's 425-404-1227

24   is not accurate enough to positively determine the location of PELAYO's phone.

25          122.    According to the location data obtained from the court authorized tracking

26   device installed on PELAYO's GMC pickup, this vehicle has been at **Target Location 1,**

27   every evening from April 24, 2019 through May 28, 2019.  Additionally, the location

28
UNITED STATES ATTORNEY
                                                                                  700 STEWART STREET, SUITE 5220
                                                                                  SEATTLE, WASHINGTON 98101
                                                                                  (206) 553-7970

1  data indicates that during the same date range, PELAYO's GMC pickup has been at

2  **Target Location 2** on four separate days.  As discussed below, PELAYO has multiple

3  vehicles registered in his name.  It should be noted that on multiple occasions, the

4  location data for PELAYO's phone does not appear to be in the same general vicinity as

5  PELAYO's GMC pickup, which is indicative of PELAYO driving one of his other

6  vehicles.

7  **G.     Records Pertaining to Target Location 1 and Target Location 2**

8       123.     According to the Washington Department of Licensing (DOL) Anthony

9  Ryan PELAYO has the location address 18222 Russian Road, Arlington, Washington

10 (**Target Location 2**) and the mailing address as 1902 Broadway, Everett, Washington.

11 According to Washington DOL, PELAYO updated his address to **Target Location 2** on

12 April 1, 2019.

13      124.     Additionally, according to Washington DOL, PELAYO has the following

14 vehicles that list **Target Location 2** as the residential address and 1902 Broadway,

15 Everett, Washington 98201 as the mailing address: a 2015 Ford Transit Connect cargo,

16 Washington license plate C33852P, a 2015 Polaris Razor, Washington license plate

17 X003493, and a 1969 Oldsmobile Cutlass, Washington license plate 41890CV.

18      125.     According to the Snohomish County assessor's website, **Target Location 2**

19 was purchased by LB Trust in 2011.  The listed address on the Snohomish County

20 assessor's website for LB Trust is 3423 68th Drive Northeast, Marysville, Washington

21 (**Target Location 1**).

22      126.     According to Snohomish County Public Utility District (PUD), **Target**

23 **Location 2** was vacant as of August 7, 2018.  There are two notes in records provided by

24 Snohomish County PUD, the first reads, "xxxxx 03/05/19 – Owner Anthony Pelayo cld

25 inq about install of temp mtr. Xfer'd to xxxxx[1]."  The second note reads, "xxxxx

26

27 ─────────────────────

28 [1] The name and initials of the unrelated party listed in the notes is omitted and replaced with xxxxx.

AFFIDAVIT OF SPECIAL AGENT CHENG - 45
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  08/06/18. Owner Anthony Pelayo (TN 425-404-1227). Avsd is tearing down preoperty,

2  trnsfrd to CE xxxxx to inq on removing meter." As discussed above, investigators

3  believe PELAYO to be the user 425-404-1227. Based on the information listed on the

4  Snohomish County assessor's website and the records from Snohomish County Public

5  Utility District, PELAYO owns **Target Location 2,** through LB Trust.

6       127.    According to Washington DOL, PELAYO has a 2016 GMC Sierra,

7  Washington license plate C58448L, registered to 3423 68th Drive Northeast, Marysville,

8  Washington 98270 (**Target Location 1**).

9       128.    According to the Snohomish County assessor's website, 3423 68th Drive

10  Northeast, Marysville, Washington 98270 (**Target Location 1**) is owned by Anthony

11  PELAYO.

12       129.    According to Puget Sound Energy, they are the providers of natural gas to

13  **Target Location 1** and the current subscriber is Anthony PELAYO with a phone number

14  of 425-404-1227 and a service start date of November 6, 2007.

15  **G.**    **Records Pertaining to Target Location 3**

16       130.    According to Washington DOL, Robert Michael TABARES has a listed

17  location of 415 Lakeview Road Unit F4, Lynnwood, Washington (**Target Location 3**).

18  Additionally, as discussed below, in June 2018 TABARES had Lactose shipped to

19  **Target Location 3**, at the request of PELAYO. Investigators believe that the Lactose

20  was being used by PELAYO in the pressing of counterfeit "M30" pills.

21       131.    Additionally, according to Washington DOL, on May 8, 2019, TABARES

22  registered a 2005 Chevrolet Impala, Washington license plate BOZ6343, to **Target**

23  **Location 3**.

24  **G.**    **Search Warrant of PELAYO's iCloud account**

25       132.    On or about April 15, 2019, investigators received records from Apple.

26  Investigators reviewed these records which indicated that 425-404-1227 is the phone

27  number listed on an Apple account with the Apple ID of anthonypelayo@comcast.net.

28  This account has a customer name of Anthony PELAYO and an address of 3423 68th

AFFIDAVIT OF SPECIAL AGENT CHENG - 46
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Drive Northeast, Marysville, Washington (**Target Location 1**).  The Apple records

2  indicated that in September 19, 2014, PELAYO purchased an iPhone 6.  The Apple

3  records indicated that this Apple account was originally in the name Vilayvanh

4  Soutavong, the same name in which PELAYO's phone is subscribed, and that in March

5  of 2016, the account was changed to PELAYO's name.

6      133.   On April 29, 2019, US Magistrate Judge Brian A Tsuchida authorized a

7  search warrant for PELAYO's iCloud account.  That search warrant was served

8  electronically on Apple.  In May 2019 investigators received the records from Apple.

9  The review of PELAYO's iCloud data is still on going.  The following is a brief

10  summary of the information that has been identified to date.  The last text message

11  recovered from PELAYO's iCloud account was dated June 23, 2018.

12      134.   According to the records provided by Apple, investigators received data

13  stored in the iCloud account for Apple ID, anthonypelayo@comcast.net.  This account

14  had two devices backed up to this account.  The phone number assigned to one of the

15  devices was 425-366-9402 and the other device had two phones assigned to it, 425-314-

16  3101 and 425-404-1228.  Investigators also found photos of PELAYO and Vilayvanh

17  Soutavong in this iCloud account.

18      135.   According to AT&T records, 425-314-3101 is subscribed to Mike Nguyen

19  with an address of 1902 Broadway, Everett, Washington.  As discussed above, this

20  Broadway address is the same address used by PELAYO as his mailing according to

21  Washington DOL.  Investigators searched Washington DOL for 1902 Broadway, Everett,

22  Washington address and did not locate a Mike Nguyen at that address.

23      136.   In the messages located in the iCloud backup account for PELAYO, there

24  were messages between 425-314-3101 and 360-395-5222, WOOLARD's phone number.

25  The first of these messages was on August 29, 2017, from 425-314-3101 to

26  WOOLARD's phone and said, "This my other line" and "Text me on this one."

27  WOOLARD replied, "T?" and 425-314-3101 said, "Ya gold tooth."  On October 30,

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2017, 425-314-3101 send "I have to watch lil man today nois stomach has been cramping so she needs a day off." Investigators believe PELAYO's wife/partner to be named Noi and that PELAYO and Noi have children together. Based on the information discussed above, investigators believe PELAYO to be the user of 425-314-3101.

137.    Investigators identified a text message conversation between PELAYO's 425-314-3101 and 206-305-5447. The first message found from 206-305-5447 was dated May 11, 2018 and said, "New Phone." On May 13, 2018, 206-305-5447 sent "Yea I no no more lil ppl I cut itbfrom 12 to 6" and "Packs or nothin." PELAYO replied, "Ya man give those lil shits to someone else." Later in the conversation, PELAYO said, "The goal is to have money coming in without doin anything." 206-305-5447 replied, "You are right bro I can't deny I need to just simmer down." Later in the conversation, PELAYO said, "Ya if niggas ain't evolving u gotta cut em," "I've cut hella of the homies off" and "I've been doin this for 17 years and I switch my shit up all the time." On May 15, 2018, 206-305-5447 sent, "Imma wanna swap 40 also." PELAYO replied, "ok." On May 16, 2018, 206-305-5447 sent, "I can come threw at 8am tomorrow" and "meeting him first thing." PELAYO replied, "let me make some calls and let u know." 206-305-5447 said, "Ok," "And the swap" and "I'll be there first thing." On May 17, 2018, 206-305-5447 sent "He only bright 4500," "we can do 23.5" and "lmk when ur ready." PELAYO replied, "Ok I'll hit u ASAP." Later in the conversation PELAYO asked, "R they already separated?" and "I need 4 then the 5 separate." 206-305-5447 replied, "Yea" and later sent "all in hundred packs." Based on my training and experience and this investigation, I believe that PELAYO was distributing some quantity of pills to the user of 206-305-5447, and the user of 206-305-5447 was providing $4,500 in payment for pills previously provided.

138.    According to Verizon records, 206-305-5447 is a pre-paid phone which has been resold to Tracfone. Additionally, Verizon records show that 206-305-5447 has been in contact with PELAYO's 425-314-3101, 199 times between May 11, 2018 and May 18,

2018.  206-305-5447 was disconnected on August 11, 2018.  At this time, investigators do not know who the user of 206-305-5447 is.

139.   Investigators also identified over 1000 messages between PELAYO and 425-691-9633, which investigators believe to be used by TABARES, as discussed above. In these messages PELAYO and TABARES discuss transferring funding via Bitcoin, Western Union money transfers, TABARES checking the status of packages for PELAYO and the purchase of equipment and materials for the pressing of fentanyl into pills.  Some of those messages are discussed below.

140.   On June 3 through 5, 2018, PELAYO and TABARES had the following exchange.

TABARES: "Got a big ass package from eBay homez.  Holla"

PELAYO: "Is it the mixer"

TABARES: "Ya guey"

TABARES: "Big ol wooden crate"

PELAYO: "WTH send me a pic"

TABARES then sent a photo of a wooden crate to PELAYO

TABARES: "U get my pic bro. Lost all my contacts kuz my ol fone took a chit
        homez. Chewy gave me urs."

PELAYO: "Will that fit in ur car"

TABARES: "It's gonna b a tight fit. But il try. If it does. What me to bring it
        homez"

PELAYO: "Not today I gotta g to my nieces graduation in a sec I'll let u kno"

PELAYO and TABARES exchange several more messages about the size of the wooden crate.

TABARES: "It's in my house rn. Ima need my pop to help me put it in. K. B
        home around 8"

AFFIDAVIT OF SPECIAL AGENT CHENG - 49
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Several more messages are exchanged about the size of the crate and delivering

2      the crate until the following message.

3      TABARES: "I dropped the box off at chewys homez. K. Lmk if u need anything

4      bro. Still needs to make sum monies"

5      141.   I believe in the above conversation, TABARES told PELAYO that the

6 mixer depicted in the photograph below was delivered to TABARES's residence (**Target**

7 **Location 3**) and that TABARES arranged to deliver the mixer to PELAYO.

8      142.   On June 5, 2018, PELAYO and TABARES begin a discussion about

9 TABARES ordering a pill press from eBay on behalf of PELAYO. The first message

10 from TABARES said, "Ok tell him we want that and can we get 110 power." Multiple

11 messages are exchanged until PELAYO said, "Email that other place and see if they have

12 the force feeder" and TABARES replied, "OK, get back at cha." TABARES then said,

13 "That seller must b gone homez. Kuz I can't find him. Even by his name nuthin fo 6600

14 all 6500. Tha ones I found." PELAYO told TABARES, "Email one of them then" and

15 TABARES said, "Ok" and "I emailed the second one." PELAYO replied, "Ok lmk,"

16 "Ask him what he means by clearing customs" and "Tell him we want it for making

17 candy." TABARES responded, "I did homez. But I dnt like that I can't thru eBay. Dude

18 has zero sales or reviews. An it takes away the eBay guaranteed k ima holla wen they

19 respond." The conversation continues about customs and order the pill press until

20 PELAYO sends three eBay links for a ZP 9 Rotary Tablet Press Machine to TABARES.

21 In response to the eBay link, TABARES said "Ok. Gonna buy then. Wuts tha shipping

22 address or jus my place" and PELAYO replied, "Just send it to ur house." Based on the

23 conversation that followed, it does not appear that TABARES ordered the pill press as

24 discussed. However, based on this conversation, it is apparent that TABARES is willing

25 to have equipment and supplies to his residence (**Target Location 3**) on behalf of

26 PELAYO.

27

28

1       143.   On June 20 and 21, 2018, PELAYO and TABARES had the following

2  exchange.

3

4       PELAYO: "Hey I'm gonna have to hold off on that machine so I'm gonna need u

5               to get a cashier's check to my business account."

6       TABARES: "Ok. How u dew that. Go ask my bank?"

7       PELAYO: "Ya just go inside and say u need a 7k cashiers check to pelayo & sons

8               llc"

9       PELAYO: "Actually let's order some stuff and then get a check for the rest"

10     TABARES: "Ok. Jlmk homex. Il b out hurr"

11     PELAYO: "Ok"

12     PELAYO: "So order another 20kgs of that same stuff and 20 more lactose bottles"

13     PELAYO: "Then let me know what it comes to"

14     TABARES: "Tha other stuff says unavailable homez"

15     TABARES then sent the following photo to PELAYO

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20     PELAYO: "The 20kg stuff"

21     TABARES: "Ya.  Says unavailable wen I try to order it.  But tha lactose chit ther

22                 want me to order that rn?"

23     PELAYO: "Ya order lactose now"

24     PELAYO: "Let me check on mother"

25     PELAYO: "Other"

26     TABARES: "Wut chu say about my mamas homez. Lol. K ordering now"

27     PELAYO: "Was that other one on eBay"

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 52
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     TABARES: "See. Says unavailable homez"

2     TABARES then sent the following photograph



144.   The first photo sent by TABARES appears to show the purchase of De La Cruz Pure Lactose Monohydrate Powder which TABARES is having delivered to his residence at 415 Lakeview Road spc F-4, Lynnwood, Washington 98087 (**Target Residence 3**). The listed phone number is 425-xxx-xx33. As discussed above, TABARES phone number is area code 425 and ends in 33. Also, based on the conversations between TABARES and PELAYO, investigators believe that TABARES is

AFFIDAVIT OF SPECIAL AGENT CHENG - 53
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   ordering the Lactose on behalf of PELAYO for the purposes of pressing counterfeit
2   "M30" pills.

3        145.   The second photo sent by TABARES appears to show the purchase history
4   for an individual.  Shown on the purchase history is a 5kg powder paste materials mixer, I
5   believe this to be the mixer discussed above.  Also in the photograph is an item
6   "Microcrystalline Cellulose, Ultra pure, Type 102, 20kg"  Based on my training and
7   experience, I know that a powder mixer can be used to mix binder materials with the
8   active ingredients, based on this investigation, fentanyl or a fentanyl analogue, before
9   being pressed into pills.  Additionally, based on the above text conversation, I believe
10  that PELAYO is directing TABARES to order the Microcrystalline cellulose to be used
11  in the process of pressing pills.

12  **P.**    **Status of the Case**

13       146.   On September 1, 2018, WOOLARD was arrested as he attempted to enter
14  the United States using his U.S. Passport at the San Ysidro port of entry.[2]

15       147.   On September 13, 2018, a federal grand jury in the Western District of
16  Washington returned an Indictment charging WOOLARD and THOMPSON in *United*
17  *States v. Woolard, et al.*, CR18-217RSM, with *Conspiracy to Distribute Controlled*
18  *Substances*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1), and
19  *Possession of Furanyl Fentanyl with Intent to Distribute*, in violation of 21 U.S.C.
20  §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 (Count 2).  WOOLARD was also
21  charged with *Possession of Furanyl Fentanyl with Intent to Distribute*, in violation of 21
22  U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 (Count 3), *Felon in Possession*

23
24
25
26
27

28  [2] WOOLARD has remained in custody since his arrest on September 1, 2018.

AFFIDAVIT OF SPECIAL AGENT CHENG - 54
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   *of Firearms*, in violation of 18 U.S.C. § 922(g)(1) (Count 4), and *Possession of Firearms*

2   *in Furtherance of a Drug Trafficking Offense*, in violation of 18 U.S.C. § 924(c).[3]

3       148.   On September 13, 2018, THOMPSON was arrested pursuant to an arrest

4   warrant.[4]

5       149.   Trial in this matter is scheduled for July 15, 2019.

6       150.   As discussed above, investigators have found multiple messages and

7   photographs where WOOLARD and/or PELAYO have discussed the use of a pill press.

8   Additionally, investigators have located numerous messages in which they believe that

9   WOOLARD is requesting PELAYO press pills for WOOLARD.  Investigators have

10   conducted approximately 10 search warrants on physical locations and have not been able

11   to located the pill press used by WOOLARD and PELAYO.

12   **IV.   KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

13       151.   Based on my training and experience, and my discussions with other

14   experienced officers and agents involved in drug investigations, I know the following:

15       a.   Traffickers of controlled substances, and those who assist them,

16   maintain and tend to retain accounts or records of their drug trafficking activities,

17   including lists of drug quantities and money owed, telephone records including contact

18   names and numbers, photographs, and similar records of evidentiary value.  These items

19   are generally kept in locations where drug traffickers believe their property is secure and

20   will remain undetected from law enforcement, such as inside their homes, vehicles and

21   storage lockers.

22       b.   Traffickers of controlled substances commonly maintain addresses,

23   vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

---

25 [3] WOOLARD was previously convicted of a crime punishable by imprisonment for a term

26 exceeding one year, to wit:  Use of a Building for Unlawful Drugs, on or about September 24, 2004, in Island County Superior Court., Case No. 04-1-00050-6.

27 [4] Following a detention hearing on September 19, 2018, the Court released THOMPSON and

28 placed him on pretrial supervision.

AFFIDAVIT OF SPECIAL AGENT CHENG - 55
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  telephone numbers of their suppliers, customers and associates in the trafficking

2  organization and it is common to find drug traffickers keeping records of said associates

3  in cellular telephones and other electronic devices.  Traffickers almost always maintain

4  cellular telephones for ready access to their clientele and to maintain their ongoing

5  narcotics business.

6          c.      Traffickers maintain evidence of their criminal activity at locations

7  that are convenient to them, including their residences vehicles, and storage lockers.  This

8  evidence often includes more than contraband and paraphernalia and includes financial

9  records, records of property and vehicle ownership, records of property rented, records of

10  post office boxes used to ship and receive contraband and currency, records of other

11  storage facilities used to hide drugs or currency, and other documentary evidence relating

12  to commission of, and proceeds from, their crimes.  Narcotics traffickers sometimes take

13  or cause to be taken photographs and/or video recordings of themselves, their associates,

14  their property, and their illegal product, or have photo or video security systems that

15  record images from their homes or property.  These individuals usually maintain these

16  photographs and recordings in their possession or at their premises, in a safe place.  Such

17  evidence may be kept at a safe location for a long time after the drug deal(s) to which

18  they pertain are completed, if the location remains under the control of the trafficker.

19          d.      During the execution of search warrants, it is common to find

20  papers, letters, billings, documents, and other writings which show ownership, dominion,

21  and control of vehicles, residences, and/or storage units.

22          e.      Persons trafficking and using controlled substances commonly sell

23  or use more than one type of controlled substance at any one time.

24          f.      Traffickers frequently maintain items necessary for weighing,

25  packaging, and cutting drugs for distribution.  This paraphernalia often includes, but is

26  not limited to, scales, plastic bags, pill presses and cutting/diluting agents and items to

27  mask the odor of drugs

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 56
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        g.     Traffickers often maintain weapons, including guns and ammunition,

2  in secure locations such as their residences and storage lockers, in order to protect their

3  drugs and drug proceeds.

4        h.     Traffickers often have false identification documents and

5  identification documents in the names of others.

6        i.     Drug trafficking is a cash business, and in order to escape notice

7  from authorities for using unexplained income, or hide excessive cash from illegal

8  activities, traffickers either keep large quantities of cash at home or other secure locations

9  such as a vehicles and storage locker, or convert the cash into other valuable assets, such

10  as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth.

11  Records of such conversions are often stored where a trafficker lives and are maintained

12  there for long periods of time.

13        j.     A pill press or encapsulating machine, and its associated equipment,

14  are used to convert powder drugs to pill form.

15        k.     Illegal drug trafficking is a continuing activity over months and even

16  years.  Illegal drug traffickers will repeatedly obtain and distribute controlled substances

17  on a somewhat regular basis, much as any distributor of a legitimate commodity would

18  purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which

19  fluctuates in size depending upon various factors, including the demand and supply for

20  the product.  I would expect the trafficker to keep records of his illegal activities for a

21  period of time extending beyond the time during which he actually possesses illegal

22  controlled substances, in order that he can maintain contact with his criminal associates

23  for future drug transactions, and so that he can have records of prior transactions for

24  which, for example, he might still be owed money, or might owe someone else money.

25  These records are often created in code.

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    q.    Money launderers often have banking records to include but not
2    limited to, deposit or withdrawal slips, bank statements, checks, or money orders.  Some
3    of these banking records may not be in their own name.

4    r.    Money launderers often have several accounts documented in some
5    form, or instructions detailing how to handle each respective account.  For example, they
6    may have a list of accounts belonging to several different people with instructions for
7    how much to deposit or withdraw from each.

8    s.    Money launderers often have records or evidence related to how the
9    proceeds were spent or concealed.  Evidence may include jewelry, vehicles, storage
10   lockers, safe deposit boxes or other unknown bank accounts.

11   t.    Money launderers often have banking records to include but not
12   limited to, deposit or withdrawal slips, bank statements, checks, or money orders.  Some
13   of these banking records may not be in their own name. Money launderers often have
14   several accounts documented in some form, or instructions detailing how to handle each
15   respective account.  For example, they may have a list of accounts belonging to several
16   different people with instructions for how much to deposit or withdraw from each and
17   often maintain this information for long periods of time in their residences or safe deposit
18   boxes.

19   u.    Money launderers often have records or evidence related to how the
20   proceeds were spent or concealed and often maintain this information for long periods of
21   time in their residences or safe deposit boxes.  Evidence may include jewelry and/or
22   vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts.
23   The use of bank accounts is a common money movement technique used by drug
24   traffickers to receive payment for narcotics from customers outside of their geographic
25   region.  It is common for a trafficker to use several bank accounts for this purpose
26   simultaneously in an attempt to avoid detection by the financial institutions and/or law
27   enforcement.  The use of multiple accounts, and the commingling of illicit funds with
28

AFFIDAVIT OF SPECIAL AGENT CHENG - 58
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  legitimate funds in particular, is often part of the plan to conceal the illegal activity or
2  may be part of the overall integration mechanism by which the illicit funds are made to
3  appear as part of the legitimate income so that only a small portion of or even none of the
4  funds from an account are seized.

5      152.   Drug dealers use cellular telephones as a tool or instrumentality in
6  committing their criminal activity. They use them to maintain contact with their suppliers,
7  distributors, and customers. They prefer cellular telephones because, first, they can be
8  purchased without the location and personal information that land lines require. Second,
9  they can be easily carried to permit the user maximum flexibility in meeting associates,
10  avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be
11  passed between members of a drug conspiracy to allow substitution when one member
12  leaves the area temporarily. I also know that it is common for drug traffickers to retain in
13  their possession phones that they previously used, but have discontinued actively using, for
14  their drug trafficking business. Based on my training and experience, the data maintained
15  in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes
16  the following:

17      a.   The assigned number to the cellular telephone (known as the mobile
18          directory number or MDN), and the identifying telephone serial number (Electronic
19          Serial Number, or ESN), (Mobile Identification Number, or MIN), (International
20          Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity,
21          or IMEI) are important evidence because they reveal the service provider, allow us
22          to obtain subscriber information, and uniquely identify the telephone. This
23          information can be used to obtain toll records, to identify contacts by this telephone
24          with other cellular telephones used by co-conspirators, to identify other telephones
25          used by the same subscriber or purchased as part of a package, and to confirm if the
26          telephone was contacted by a cooperating source or was intercepted on a wiretap
27          here or in another district.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 59
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        b.    The stored list of recent received calls and sent calls is important

2  evidence. It identifies telephones recently in contact with the telephone user. This is

3  valuable information in a drug investigation because it will identify telephones used

4  by other members of the organization, such as suppliers, distributors, and customers,

5  and it confirms the date and time of contacts. If the user is under surveillance, it

6  identifies what number he called during or around the time of a drug transaction or

7  surveilled meeting. Even if a contact involves a telephone user not part of the

8  conspiracy, the information is helpful (and thus is evidence) because it leads to

9  friends and associates of the user who can identify the user, help locate the user, and

10  provide information about the user. Identifying a defendant's law-abiding friends is

11  often just as useful as identifying his drug-trafficking associates.

12        c.    Stored text messages are important evidence, similar to stored

13  numbers. Agents can identify both drug associates, and friends of the user who

14  likely have helpful information about the user, his location, and his activities.

15        d.    Photographs on a cellular telephone are evidence because they help

16  identify the user, either through his or her own picture, or through pictures of

17  friends, family, and associates that can identify the user. Pictures also identify

18  associates likely to be members of the drug trafficking organization. Some drug

19  dealers photograph groups of associates, sometimes posing with weapons and

20  showing identifiable gang signs.

21        e.    Stored address records are important evidence because they show the

22  user's close associates and family members, and they contain names and nicknames

23  connected to phone numbers that can be used to identify suspects.

## V.    TECHNICAL TERMS FOR COMPUTER SEIZURE AND SEARCH

24

25       153.    Based on my training and experience, I use the following technical terms

26  to convey the following meanings:

27        a.    IP Address: The Internet Protocol address (or simply "IP address") is

28  a unique numeric address used by computers on the Internet. An IP address looks like a

AFFIDAVIT OF SPECIAL AGENT CHENG - 60
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  series of four numbers, each in the range 0-255, separated by periods (e.g.,

2  121.56.97.178). Every digital device attached to the Internet must be assigned an IP

3  address so that Internet traffic sent from and directed to that digital device may be

4  directed properly from its source to its destination. Most Internet service providers

5  control a range of IP addresses. Some computers have static-that is, long-term-IP

6  addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

7

8          b.      Internet: The Internet is a global network of computers and other

9  electronic devices that communicate with each other. Due to the structure of the Internet,

10  connections between devices on the Internet often cross state and international borders,

11  even when the devices communicating with each other are in the same state.

12          c.      Electronic Storage media: Electronic Storage media is any physical

13  object upon which data can be recorded. Examples include hard disks, RAM, floppy

14  disks, flash memory, CD-ROMs, and other magnetic or optical media.

15

16  **VI.    COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

17          154.    As described above and in Attachment B, this application seeks permission

   to search for Evidence and/or fruits of the commission of the following crimes:

18  Distribution of, and possession with intent to distribute, controlled substances, and

19  conspiracy to commit this offense, in violation of Title 21, United States Code, Sections

20  841(a)(1), 841(b)(1), and 846; Use of communication facilities to commit, facilitate, or

21  further an act or acts which constitute a felony in violation of Title 21, United States

22  Code, Section 843(b);that might be found at **Target Locations 1, 2,** and **3** in whatever

23  form they are found. One form in which the evidence, fruits, and/or instrumentalities

24  might be found is data stored on digital devices such as computers, computer hard drives

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 61
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   or other electronic and electronic storage media.[2]  Specifically, evidence of orders for

2   Fentanyl or fentanyl analogues being placed using the Internet. Thus, the warrant applied

3   for would authorize the seizure of digital devices or other electronic storage media or,

4   potentially, the copying of electronically stored information from digital devices or other

5   electronic storage media, all under Rule 41(e)(2)(B).

6       155.   Based upon my review of the evidence gathered in this investigation, my

7   review of data and records, information received from other agents and computer

8   forensics examiners, and my training and experience, I submit that if a digital device or

9   other electronic storage media is found at the **Target Locations 1, 2,** and **3**, there is

10  probable cause to believe that evidence or instrumentalities of the crimes of Distribution

11  of, and possession with intent to distribute, controlled substances, and conspiracy to

12  commit this offense, in violation of Title 21, United States Code, Sections 841(a)(1),

13  841(b)(1), and 846; Use of communication facilities to commit, facilitate, or further an

14  act or acts which constitute a felony in violation of Title 21, United States Code, Section

15  843(b) will be stored on those digital devices or other electronic storage media.  I believe

16  digital devices or other electronic storage media are being used to order fentanyl over the

17  internet from a supplier or suppliers based in China.  I know based on my training and

18  experience that the internet is a common tool used to access suppliers of fentanyl in

19  China, to arrange for the ordering, payment and delivery of packages of fentanyl from

20  China to the United States.  There is, therefore, probable cause to believe that evidence or

21  instrumentalities of the crimes of Distribution of, and possession with intent to distribute,

22  controlled substances, and conspiracy to commit this offense, in violation of Title 21,

23  United States Code, Sections 841(a)(1), 841(b)(1), and 846; Use of communication

24  facilities to commit, facilitate, or further an act or acts which constitute a felony in

25

26  [2] Electronic Storage media is any physical object upon which electronically stored
27  information can be recorded.  Examples include hard disks, RAM, floppy disks, flash
    memory, CD-ROMs, and other magnetic or optical media.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 62
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  violation of Title 21, United States Code, Section 843(b) exists and will be found on

2  digital device or other electronic storage media at the **Target Locations 1, 2,** and **3**, for at

3  least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

## VII.  SEARCH TECHNIQUES

156.  Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging,

or otherwise copying digital devices or other electronic storage media that reasonably

AFFIDAVIT OF SPECIAL AGENT CHENG - 63
USAO #2018R00949

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  appear capable of containing some or all of the data or items that fall within the scope of
2  Attachment B to this Affidavit, and will specifically authorize a later review of the media
3  or information consistent with the warrant.

4      157.    Because several people may share the **Target Locations** as a residence, it is
5  possible that the **Target Locations** will contain digital devices or other electronic storage
6  media that are predominantly used, and perhaps owned, by persons who are not suspected
7  of a crime.  If agents conducting the search nonetheless determine that it is possible that
8  the things described in this warrant could be found on those computers, this application
9  seeks permission to search and if necessary to seize those computers as well.  It may be
10  impossible to determine, on scene, which computers contain the things described in this
11  warrant.

## VIII.  CONCLUSION

12      158.    Based on the information set forth herein, there is probable cause to search
13  the above described **Target Locations 1, 2,** and **3,** as further described in Attachment A,
14  for evidence, fruits and instrumentalities, as further described in Attachment B, of crimes
15  committed by the individuals listed in this affidavit and their coconspirators, specifically
16  Distribution of, and Possession with Intent to Distribute, Controlled Substances, in
17  violation of Title 21, United States Code, Section 841(a)(1); Conspiracy to Distribute

18
19
20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1)

2   and 846, Money Laundering, in violation in violation of Title 18, United States Code

3   1956; and Distribution of controlled substances by means of the internet, in violation of

4   Title 21, United States Code, Sections 823, 841(h)(1)

5

6                                        Joseph Cheng

7                                        Special Agent

8                                        Drug Enforcement Administration

9

10          The above-named agent provided a sworn statement attesting to the truth of the

11   contents of the foregoing affidavit on 29th day of May, 2019.

12

13

14                                        Paula L. McCandlis

15                                        United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 65
USAO #2018R00949

# ATTACHMENT A

This tracking warrant shall apply to:

a) **Target Residence 1:** 3423 68th Drive Northeast, Marysville, Washington 98270, is believed to be the residence of Anthony PELAYO. **Target Residence 1** is a two story residence on the east side of 68th Drive Northeast in Marysville, Washington. The house has blue siding with a grey roof and white trim. The front door is accessed by a staircase with white railings. There are two white garage doors facing west.

b) **Target Residence 2:** 18222 Russian Road, Arlington, Washington, is a property which investigators believe to be owned Anthony PELAYO and where PELAYO is believed to be building a new residence. **Target Residence 2** is a nine acre lot on the south side of Russian Road. The residence has a large wooden privacy fence bordering Russian Road. On the east side of the lot is a gravel driveway. A white mailbox with the numbers 18222 is on the west side of the gravel driveway. The gravel driveway leads to a large two story house that is currently under construction. To the south of the house under construction, are three large outbuildings, one with a red roof, one with a light colored roof and one with a green roof.

c) **Target Residence 3:** 415 Lakeview Road Unit F4, Lynnwood, Washington is believed to be the residence of Robert TABARES. **Target residence 3** is a light colored mobile home with white trim, with "F4" marked on the west side of the trailer facing the roadway. There is a covered wooden deck attached the north side of the mobile home.

For each of the Target Residences, authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not where the items described in Attachment B (list of items to be seized) could be found.

## Attachment B

## List of Items to be Searched for and Seized

This warrant authorizes the government to search for the following items:

Evidence and/or fruits of the commission of the following crimes:  Distribution of, and Possession with Intent to Distribute, Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1); Cons2025Refresh!piracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, money laundering, in violation of Title 18, United States Code Section 1956, Felon in Possession of a Firearm, in violation of  Title 18, United States Code Section 922(g), and Distribution of controlled substances by means of the internet, in violation of Title 21, United States Code, Sections 823, 841(h)(1), 841(b)(1) and 846:

1.      Controlled Substances:  Including but not limited to fentanyl, fentanyl analogues, cocaine, heroin and methamphetamine.

2.      Drug Paraphernalia:  Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3.      Pill press or encapsulating machine and its associated equipment and molds for pill production.

4.      Drug Transaction Records:  Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

5.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

6.      Cash and Financial Records:  Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashiers checks, and similar items, and money counters.

7.      Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor.

8.      Codes:  Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

11.     Evidence of Storage Unit Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth,

13.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

14.     All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash,  These documents are to include applications, payment records, money orders, frequent customer cards, etc.

15.     Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

16.     Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency, bitcoin or other digital currency.

17.     Correspondence, papers, records, and any other items showing employment or lack of employment.

18.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

19.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

20.     In addition to the evidence described below regarding digital devices, cellular telephones and other communications devices including Blackberries may be searched for the following items:

    a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

    b.     Stored list of recent received, sent, and missed calls;

    c.     Stored contact information;

    d.     Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

    e.     Stored text messages, stored emails and internet browsing history and information including stored communications over the internet.

21.     Digital devices[1] or other electronic storage media[2] and/or their components, which include:

    a.     Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

    b.     Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries,

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded.  Examples include hard disks, hard drives, solid state drives, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

Attachment B
List of Items to be Seized
Page 3

processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

        c.     Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

        d.     Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

        e.     Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

        f.     Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

        g.     Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

        22.     For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant:

        a.     evidence of the aforementioned crimes found in communications stored on the digital device, including but not limited to stored emails, text messages or other communications stored within messaging applications or programs; Digital records relating to the above described evidence, including photographs, email content, internet browsing history, scanned documents:

        b.     evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

        c.     evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        d.     evidence of the lack of such malicious software;

Attachment B
List of Items to be Seized
Page 4

      e.     evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

      f.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

      g.     evidence of the times the digital device or other electronic storage media was used;

      h.     passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

      i.     documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

      j.     contextual information necessary to understand the evidence described in this attachment.

23.     Records and things evidencing the use of an Internet Protocol address to communicate with the internet including:

      a.     routers, modems, and network equipment used to connect computers to the Internet;

      b.     records of Internet Protocol addresses used;

      c.     records of Internet activity, including  but not limited to firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages related to the above described crimes, search terms pages related to the above described crimes that the user entered into any Internet search engine, any communications over the internet by any means, and records of user-typed web addresses.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES